```
 1  JASON A. WEISS (BAR NO. 185268)
    CHARLENE J. WILSON (BAR NO. 222497)
 2  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
 3  1900 Main Street, Fifth Floor
    Irvine, California 92614-7321
 4  Phone: (949) 553-1313
    Fax:   (949) 553-8354
 5  E-Mail: jweiss@allenmatkins.com
            cwilson@allenmatkins.com
 6
    Attorneys for Defendant
 7  SAPIENT CORPORATION
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| RICHARD MIGLIOZZI, | Case No. 08 CV 1045 IEG CAB |
|---|---|
| Plaintiff, | **DECLARATION OF BRYAN JONES** |
| vs. | Date: August 4, 2008 |
| SAPIENT CORPORATION; and DOES 1 through 50, inclusive, | Time: 10:30 a.m.<br>Ctrm: 1 |
| Defendants. | Complaint Filed: April 21, 2008<br>Trial Date: None Set |

I, Bryan Jones, declare:

1. I am, and since January 29, 2007 have been, employed by Sapient Corporation ("Sapient" or the "Company"), in the position of Director, People Strategy. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to such facts under oath.

2. In my role as Director, People Strategy, I am familiar with the general operations of Sapient's business and with the Company's policies and practices, including, without limitation, those policies aimed at protecting Sapient's confidential and proprietary information and avoiding conflicts of interest and unfair competition by the Company's employees.

3. Sapient is a global company that partners with its clients to help advance its clients' businesses in the areas of marketing, business operations and technology. To fulfill its business purpose and satisfy its clients' needs, Sapient may install two or more employees ("Teams") at a client's offices, where the Teams work hand in hand with the client's employees to achieve the client's business objective(s). The Sapient Teams are entrusted with confidential and proprietary information and know-how belonging to Sapient to perform the tasks for which the client has engaged Sapient. What our clients are buying from us is the "know how" to advance the client's business in mission critical areas.

4. As a company, Sapient takes steps to protect itself against misappropriation of confidential information and ethical breaches that threaten its business model -- both by its employees and clients. To this end, Sapient requires all of its employees to sign the Company's Confidentiality Agreement ("SCA") and agree to abide by the terms of the Code of Ethics and Conduct ("SCEC"). Further, Sapient employees with higher-level access to confidential information are required to sign the Company's Fair Competition Agreement ("SFCA"). In addition, Sapient generally contracts with its clients in a manner designed to avoid the client's knowing or unknowing misappropriation of Sapient's confidential information and

business assets. Critical to Sapient's success is that the Team members act at all times in Sapient's best interests and that Sapient's clients respect Sapient's relationship with its employees, as well as the Company's proprietary information -- information which literally is unveiled on site.

5.  Sapient's business is imperiled if an employee, during an assignment, discloses Sapient's confidential and proprietary information and trade secrets to the client in an effort to promote his own self interest -- *e.g.*, tries to secure a job with the client. In addition to the compromise of valuable proprietary information, any such disclosure or threatened disclosure may create a conflict of interest and lead a client to justifiably question whether the individual is acting in the client's best interest (as a dedicated member of the Sapient Team) or in his/her own personal interest (as someone wanting to get a new job). Sapient's clients need to know that the Company, including client teams, are completely committed to helping them succeed. That is why these issues are addressed in the SFCA, SCA and SCEC.

6.  Attached hereto as Exhibits A, B and C are the SFCA, SCA and SCEC (collectively, the "Agreements"), respectively, which Plaintiff Richard Migliozzi received and signed during his employment with Sapient. The Agreements are believed to have been signed by Mr. Migliozzi in California; the Agreements were countersigned by Sapient in Massachusetts.

7.  Sapient has its principal place of business in Massachusetts, where it houses approximately 268 of the Company's 1,400 U.S. employees. The Company only has approximately 25 employees in San Diego, but it maintains no office there. Most of the Company's global operations are conducted through the Massachusetts corporate home. Central business decisions are therefore made out of the Massachusetts corporate home.

8.  Due to the centralization of the Company in Massachusetts, and solely to facilitate consistency and accountability in the event of legal disputes, the Company maintains in its employment agreements, including the SFCA and SCA, a

forum selection clause, designating Massachusetts as the applicable forum, and a choice of law clause, appointing Massachusetts law to govern any dispute that may arise.

9.   A uniform forum and choice of law is crucial to ensure that both Sapient's employees and clients understand and comply with their legal and contractual obligations and to avoid the potential for inconsistent results and forum shopping. Whether the employee is located in Massachusetts, New York or California, the contractual obligations of the parties are the same and should be applied consistently.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _17_ day of June, 2008, in _Boston, MA_.

_____
BRYAN JONES

# *Exhibit "A"*


USA ALL ROLES
v.3.1.06

## Sapient Confidentiality Agreement

**Parties.** In this Agreement, the terms "we," "us," and "our" refer to Sapient Corporation and its subsidiaries. The terms "you" and "your" refer to the individual who signs this Agreement. The term "the parties" refers to both us and you.

### Background

- We are in the business of helping clients innovate their businesses to achieve extraordinary results from their customer relationships, business operations and technology.
- You are an individual in whom we have great confidence, and whom we entrust with responsibilities to help our clients achieve these results.
- From time to time, we may also entrust you with information — our own or our clients' — that we need you to protect.

Therefore, in consideration of the promises contained in this Agreement, the parties agree as follows.

### Terms and Conditions

**1  Your Employment**
Your continued employment with us (either by Sapient Corporation or one of its subsidiaries) is contingent on your making the promises laid out in this Agreement. We hope that our employment relationship will last and be rewarding for you, for us and for our clients. But entering into this Agreement does not change the at-will nature of your employment. In other words, despite this Agreement, you remain free to leave our employment for any reason or for no reason at all; similarly, we remain free to have you leave your employment for any reason or for no reason at all. Nothing in this Agreement is intended to bind us in an employment relationship for a certain term. The term of your employment is the period during which we employ you.

**2  Protecting Confidential Information**

**2.1  Our Confidential Information Defined.** Our ability to help clients succeed depends, in part, on information we possess that gives us an advantage over our competitors who lack this information. In this Agreement, we refer to this information as "our confidential information." We have gathered or developed our confidential information by expending time, energy and resources to better enable us to help our clients succeed. If our competitors were to learn our confidential information, they would gain an unfair advantage over us in the marketplace. If others were to learn our confidential information, it could jeopardize our relationships with our clients.

**2.2  Protecting Our Confidential Information.** Because you are a valued member of our team, we entrust you with some of our confidential information. You promise to protect our confidential information, and you promise that you will not share it with anyone, except as we direct. You also promise that you will not use our confidential information for your own use, or for anyone else's use, except as we direct. This promise extends beyond the term of your employment with us, and does not end unless we expressly release you from it in writing beforehand.

**2.3  Our Clients' Confidential Information.** Our clients often share with us their confidential information: that is, information they wish to keep secret from their competitors. We or they may share this confidential information with you. You promise to protect this confidential information, and you promise that you will not share it with anyone, except as we direct. You also promise that you will not use our clients' confidential information for your own use, nor for anyone else's use,

except as we direct. This promise extends beyond the term of your employment with us and does not end unless we expressly release you from it in writing beforehand.

2.4  **Your Former Employers' Confidential Information.** In your previous jobs with other employers, they may have entrusted you with their own confidential information. We have no desire to have you violate their confidential information. Therefore, you promise that, during your employment with us, you will not share your former employers' confidential information with us or anyone else beyond whom your former employers direct. By signing this Agreement, you assure us that nothing in it conflicts with (or would cause you to violate) any nondisclosure agreement you have signed with a previous employer of yours. If, during the course of your employment with us, you come to learn of a conflict you have with a previous nondisclosure agreement, you will notify us immediately.

3  **Inventions and Other Things You Create**
We strive to hire creative people, and creative people create things. This Agreement spells out who owns these creations.

3.1  **Creations You Own.** We claim no ownership of anything you create or invent that:

(A)  you develop entirely on your own time without using our equipment, supplies, facilities or trade secrets; **and**

(B)  is not related to our business, research or development (or business, research or development we can show that we anticipate doing); **and**

(C)  does not result from any work you did (or are doing) for us.

3.2  **Creations We Own.** Anything you create or invent during your employment with us, and for a period of one year after, that does not fall under paragraph 3.1 will be considered ours. You agree to assign any title or other rights in these creations to us. You agree that any of these creations that are protectable by US copyright law will be considered "works made for hire" for our benefit. You agree to maintain adequate written records of these creations, and you promise to help us in all reasonable ways (at our expense), both during and after your employment, in the acquisition, protection and defense of our rights to these creations.

3.3  **Your Previous Creations.** Before you joined us, you may have created things on your own or for previous employers. We have no desire to take ownership of these creations. Therefore, to avoid any conflict over when you created something and who owns it, you must list in **Exhibit A** all your previous creations to which you assert ownership. You need only include creations that relate to our business, services or products.

4  **Our Property**
You promise to return our property at the termination of your employment with us, or at any time that we ask you to do so. "Our property" includes both tangible and intangible things, such as information (whether confidential or not) in whatever form you have it.

5  **Assignment**
We may assign our duties or interests under this Agreement to any parent, affiliate, successor or subsidiary that we may have. You may not assign your duties or interests under this Agreement.

6  **Miscellaneous Provisions**

6.1  **Entire Agreement; Modification.** This Agreement contains all the terms and conditions agreed on by the parties relating to the protection of our confidential information and our clients' confidential information. Any previous agreements on this subject between the parties are replaced by this Agreement. This Agreement can be modified or changed only by a written document signed by both parties.

[continues next page]



6.2 **Waiver.** A party's waiver of enforcement of any terms or conditions in this Agreement will be effective only if it is in writing. A waiver by us will be effective only if signed by a Chief Executive Officer of Sapient Corporation (specifically, Jerry Greenberg, Stuart Moore or their future replacement(s) in the CEO role). A party's specific waiver will not be considered a waiver of any earlier, concurrent or later breach.

6.3 **Survival.** This Agreement will remain in effect, regardless of any future changes to your job, title, compensation or the termination of your employment.

6.4 **Counterparts.** This Agreement may be executed in two counterparts, each of which is considered an original.

6.5 **Severability.** If a court rules that any part of this Agreement is unenforceable, the parties agree to have the court amend that part in the least way needed to make it enforceable. If the court declines to amend the Agreement, then the parties agree that the unenforceable part will be ignored and that the rest of the Agreement will continue in full force.

6.6 **Litigation.** This Agreement is governed by and must be interpreted under Massachusetts law, without regard to its choice-of-law principles. If we need to use the court system to enforce the promises in this Agreement, you agree to consent to the jurisdiction of the state and federal courts of Massachusetts. You also promise to pay our litigation costs and attorneys' fees if a court finds that you breached any of the promises you make in this Agreement.

6.7 **Headings.** All headings are for reference purposes only and must not affect the interpretation of this Agreement.

Dated: 5/24/06

SAPIENT CORPORATION (referred to as "we" throughout)

By:

_[signature]_

(printed name) <u>Andrea Edwards</u>

(title) <u>Vice President, People Success</u>

INDIVIDUAL EMPLOYEE (referred to as "you" throughout):
(signed name) _[signature]_
(printed name) RICH MIGLIOZZI
Address: 17311 APEL LANE
HUNTINGTON BEACH, CA
92649

**Exhibit A: Your Previous Creations**



| Creation | Date Created | Description |
|---|---|---|
| NONE | | |

This list is complete as of today.

5/24/06
Date

*(signature)*
Your signature

*Exhibit "B"*

MANAGER AND ABOVE
USA (California)
v.3.1.06

## Sapient Fair Competition Agreement (California Employees)

**Parties.** In this Agreement, the terms "we," "us," and "our" refer to Sapient Corporation and its subsidiaries. The terms "you" and "your" refer to the individual who signs this Agreement. The term "the parties" refers to both us and you.

### Background

- We are in the business of helping clients innovate their businesses to achieve extraordinary results from their customer relationships, business operations and technology.

- You are an individual in whom we have great confidence, and whom we entrust with responsibilities to help our clients achieve these results.

- From time to time, we may also entrust you with information — our own or our clients' — that we need you to protect. We may also entrust you with developing and maintaining our good relationships with our clients ("our goodwill").

- While we are firm believers in the value of ordinary competition in the marketplace, we need to protect ourselves from unfair competition.

Therefore, in consideration of the promises contained in this Agreement, the parties agree as follows.

### Terms and Conditions

**1  Your Employment**

Your continued employment with us (either by Sapient Corporation or one of its subsidiaries) is contingent on your making the promises laid out in this Agreement. We hope that our employment relationship will last and be rewarding for you, for us and for our clients. But entering into this Agreement does not change the at-will nature of your employment. In other words, despite this Agreement, you remain free to leave our employment for any reason or for no reason at all; similarly, we remain free to have you leave your employment for any reason or for no reason at all. Nothing in this Agreement is intended to bind us in an employment relationship for a certain term. The term of your employment is the period during which we employ you.

**2  Our Promise**

In exchange for the promises you make in this Agreement, we promise to continue to employ you on an at-will basis, as described in the previous paragraph.

**3  Working Elsewhere during Your Employment with Us**

To best help our clients succeed, we need you to be fully committed to working here. Therefore, during the term of your employment, you may not perform work or other services — directly or indirectly, whether for compensation or not — for a person or entity that competes with us. You also may not solicit, encourage or help any of our people to do so. Similarly, you may not perform work or other services — directly or indirectly, whether for compensation or not — for any other person or entity, if doing so would diminish your ability to work for us.

**4  Clients and Solicitation**

You agree that, during the term of your employment with us and for 12 months after, you will not use our confidential information or our customers' confidential information to solicit or take away (or attempt to solicit or take away) any of our clients, either for your own business or for any other

Sapient
25 First Street
Cambridge, MA 02141

-Page 1 of 3 Pages-

TEL  617.621.0200
FAX  617.621.1300

person or entity, nor will you induce or encourage any client to sever or diminish its relationship or business with us.

## 5 Soliciting Employees

You agree that, during the term of your employment and for 12 months after, you will not use our confidential information or our customers' confidential information to solicit, encourage or assist any of our people to stop working for us, nor will you use our confidential information or our customers' confidential information solicit, encourage, assist or hire — directly or indirectly — any of our people to work for a competitor, for a client of ours or for you in the markets where we do business.

## 6 Considerations in Working for Competitors or Clients

We appreciate that we cannot prevent you from leaving our employment and going to work for one of our competitors or clients. We respect your legal right to do this. At the same time, we believe that your going to work for a competitor or client of ours could, in certain situations, create a conflict of interest that we ask you to consider in making your decision.

This conflict is especially likely in situations where you are discussing employment possibilities with our competitor or client while we are relying on you to be acting in our financial best interests.

An additional ethical complication can arise in situations where you are discussing possible employment with our client at the same time you are part of the Sapient team interacting with that client. Our client may justifiably question whether you are acting in the client's interest (as a dedicated member of the Sapient team) or in your own personal interest (as someone wanting to get a new job). Our clients need to know that we – including our client teams – are 100% committed to helping them succeed.

For these reasons, we would like you to follow the following guideline while you are working at Sapient and for six months afterwards:

- Before you discuss the possibility of going to work for one of our competitors or clients, we encourage you to let your Business Unit Lead (or, alternatively, a Chief Executive Officer or the Chief Operating Officer) know that you are interested in exploring this possibility. Any of them will be happy to openly discuss the situation – and its ethical implications – with you. In some situations, they may be able to offer their full support behind your efforts.

Although we cannot require you to follow this guideline, we hope that you will do so out of a sense of fairness and ethical responsibility.

## 7 Assignment

We may assign our duties or interests under this Agreement to any parent, affiliate, successor or subsidiary that we may have. You may not assign your duties or interests under this Agreement.

## 8 Miscellaneous Provisions

**8.1** **Entire Agreement; Modification.** This Agreement contains all the terms and conditions agreed on by the parties relating to the protection of our confidential information (except for the Sapient Confidentiality Agreement) and goodwill. Any previous agreements (except for the Sapient Confidentiality Agreement) between the parties on this subject are replaced by this Agreement. This Agreement can be modified or changed only by a written document signed by both parties.

**8.2** **Waiver.** A party's waiver of enforcement of any of this Agreement's terms or conditions will be effective only if in writing. A waiver by us will be effective only if signed by a Chief Executive Officer of Sapient Corporation (specifically, Jerry Greenberg, Stuart Moore or their future replacement(s) in the CEO role). A party's specific waiver will not be considered a waiver of any earlier, concurrent or later breach.

8.3 **Survival.** This Agreement will remain in effect, regardless of any future changes to your job, title, compensation or the termination of your employment.

8.4 **Severability.** If a court rules that any part of this Agreement is unenforceable, the parties agree to have the court amend that part in the least way needed to make it enforceable. If the court declines to amend the Agreement, then the parties agree that the unenforceable part will be ignored and that the rest of the Agreement will continue in full force.

8.5 **Counterparts.** This Agreement may be executed in two counterparts, each of which is considered an original.

8.6 **Litigation.** This Agreement is governed by and must be interpreted under Massachusetts law, without regard to its choice-of-law principles. If we need to use the court system to enforce the promises in this Agreement, you agree to consent to the jurisdiction of the state and federal courts of Massachusetts. You also promise to pay our litigation costs and attorneys' fees, if a court finds that you breached any of the promises you make in this Agreement.

8.7 **Headings.** All headings are for reference purposes only and must not affect the interpretation of this Agreement.

8.8 **Broad Interpretation of Employment, Work and Solicitation.** You recognize that it is possible to create many different types of arrangements under which you (or another person) might provide services, or perform work, for a competitor or client of ours (or for you). (For instance, instead of being an employee, you might act as an independent contractor or consultant, or in return for an equity ownership interest, or in other ways.) You understand that the intention of this Agreement is to prevent you from taking the actions that this Agreement prohibits, whether you may be engaged in a formal employer-employee arrangement with a third party, or in another sort of arrangement where work or services are performed. You agree that the restrictions on employment, work and solicitation contained in this Agreement will be interpreted broadly to include these other types of arrangements as well.

Dated: 5/24/06

SAPIENT CORPORATION (referred to as "we" throughout)

By:

*[signature]*

(printed name) Andrea Edwards

(title) Vice President, People Success


INDIVIDUAL EMPLOYEE (referred to as "you" throughout):

(signed name) *[signature]*

(printed name) Rich Micciozzi

Address: 17311 Apel Lane

Huntington Beach, CA 92649

*Exhibit "C"*

Sapient Corporation

Code of Ethics and Conduct

Acknowledgement

Sapient and all of its subsidiaries have adopted a Code of Ethics and Conduct to communicate to all Sapient people the ethical and legal standards that we expect them to observe when dealing with Sapient, other Sapient people, our clients and our suppliers.

We expect all Sapient people to act ethically and obey the law. When you encounter ethical or legal issues where you are not certain about the correct course of action, you should use Sapient's Core Values and the principles described in the Code of Ethics and Conduct as guideposts in deciding how to proceed. We have adopted the Code of Ethics and Conduct to give you guidance for resolving these ethical and legal issues.

We have asked each Sapient person to acknowledge that they have read the Code of Ethics and Conduct, and agree to abide by its terms. By your signature below, you acknowledge that you have been provided with a copy of the Code of Ethics and Conduct, that you have read it, and that you agree to abide by its terms.

_____
Signature

Rich Migliozzi
Print Name

6/5/2006
Date

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA ) ss.:
COUNTY OF ORANGE )

  I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

  On June 17, 2008, I served on interested parties in said action the within:

**DECLARATION OF BRYAN JONES**

by placing a true copy thereof in sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

  Brian C. Gonzalez, Esq.
  Law Offices of Brian C. Gonzalez
  2533 S. Coast Highway 101, Suite 250
  Cardiff by the Sea, California 92007

  I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

  I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

  Executed on June 17, 2008, at Irvine, California.

  Stephanie S. Pattis
  (Type or print name)    (Signature)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

848328.01/OC