1  JASON A. WEISS (BAR NO. 185268)
   CHARLENE J. WILSON (BAR NO. 222497)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  1900 Main Street, Fifth Floor
   Irvine, California 92614-7321
4  Phone: (949) 553-1313
   Fax: (949) 553-8354
5  E-Mail: jweiss@allenmatkins.com
           cwilson@allenmatkins.com
6
   Attorneys for Defendant
7  SAPIENT CORPORATION

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 | RICHARD MIGLIOZZI,                 | Case No. 08 CV 1045 IEG CAB

12 |           Plaintiff,               | **NOTICE OF MOTION AND MOTION TO DISMISS FOR**

13 |     vs.                            | **IMPROPER VENUE AND CHOICE OF LAW; OR, IN THE**

14 | SAPIENT CORPORATION; and DOES      | **ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; OR, IN**
    | 1 through 50, inclusive,           | **THE ALTERNATIVE, TO**

15 |                                    | **TRANSFER BASED ON FORUM**
    |           Defendants.              | **NON CONVENIENS**

16

17 |                                    | Date:      August 4, 2008
    |                                    | Time:      10:30 a.m.
18 |                                    | Ctrm:      1

19 |                                    | Complaint Filed:  April 21, 2008
    |                                    | Trial Date:       None Set

20

21        **TO PLAINTIFF AND TO HIS ATTORNEY OF RECORD**:

22        PLEASE TAKE NOTICE that on August 4, 2008 at 10:30 a.m., or as soon

23 thereafter as counsel may be heard in Courtroom 1 of the above-entitled Court,

24 located at 880 Front Street, San Diego, California 92101-8900, Defendant Sapient

25 Corporation ("Sapient") will and hereby does move the Court pursuant to Rules

26 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure for an order

27 dismissing this action on the ground that the venue in this action is improper; or in

28 the alternative, to transfer this action to the District of Massachusetts pursuant to 28

1  U.S.C. § 1406(a); or, in the alternative, to transfer to the said district for

2  convenience of parties and witnesses under 28 U.S.C. § 1404(a).   In addition,

3  Sapient moves to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

4  Procedure, on the ground that Plaintiff cannot state a claim upon which relief can be

5  granted, because Plaintiff styles his claims under California law despite the fact that

6  he agreed to a choice of law provision applying Massachusetts law to the action.

7      This Motion is based on this Notice of Motion and Motion, the Memorandum

8  of Points and Authorities and the Declaration of Bryan Jones filed and served

9  concurrently herewith, and upon the papers, records and pleadings on file herein.

10

11  Dated: June _17_, 2008                    ALLEN MATKINS LECK GAMBLE
                                               MALLORY & NATSIS LLP
12

13                                          By:
14                                             JASON A. WEISS
                                               Attorneys for Defendant
15                                             SAPIENT CORPORATION

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Sapient Corporation | 2 |
| | B. Sapient's Rationale for the Forum Selection and Choice of Law Clauses | 3 |
| | C. Plaintiff Richard Migliozzi | 4 |
| | D. Plaintiff's Claims and Procedural History | 5 |
| III. | ARGUMENT AND AUTHORITIES | 5 |
| | A. The Forum Selection Clause Mandates Dismissal Or Transfer Of The Action | 5 |
| | 1. Massachusetts Law Governs The Validity And Effect Of The Forum Selection Clause | 5 |
| | 2. The Forum Selection Clause Warrants Dismissal Or, Alternatively, Transfer Of The Action | 6 |
| | B. This Court May Alternatively Dismiss Or Transfer The Case Pursuant To 28 U.S.C. § 1406(a) | 11 |
| | C. This Court Should Alternatively Transfer To Massachusetts For Convenience Pursuant To 28 U.S.C. § 1404(a) | 11 |
| | D. Plaintiff's Claims Under California Law Must Be Dismissed Because Massachusetts Law Governs This Dispute | 11 |
| IV. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot Laboratories v. Takeda Pharmaceutical Co. Ltd.*, 476 F.3d 421
(7th Cir. 2007)................................................................................................ 6

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ...................................... 9

*Doe v. Seacamp Ass'n, Inc.*, 276 F.Supp.2d 222 (D. Mass. 2003)..................... 9, 10

*Jacobson v. Mail Boxes Etc. USA, Inc.*, 419 Mass. 572, 646 N.E.2d 741
(1995).......................................................................................................... 5

*Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) ................................................ 11

*Lectric's & Inc. v. Power Controls, Inc.*, 3 Mass. L. Rep. 507 (1995) ...................... 9

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ....................................... 9

*Manetti-Farrow Inc. v. Gucci Amer., Inc.*, 858 F.2d 509 (9th Cir. 1988) ............... 6

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992) ......................... 6, 12

*Ocwen Orlando Holdings Corp. v. Harvard Property Trust, LLC*, 2008
U.S. App. LEXIS 10181 (11th Cir. 2008)............................................... 8

*P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804 (11th Cir.
2003) ......................................................................................................... 11

*Silva v. Encyclopedia Brittanica, Inc.*, 239 F.3d 385 (1st Cir. 2001)................. 8, 10

*Snapper, Inc. v. Redan*, 171 F.3d 1249 n.24 (11th Cir. 1999)............................... 7

*Stonehenge, Ltd. v. Garcia*, 989 F.Supp. 539 (S.D.N.Y. 1998)......................... 11

*Strenko v. Inforex, Inc.*, 5 Mass. App. Ct. 253 (1970) ...................................... 5, 12

*Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544
(4th Cir. 2006)............................................................................................ 8

**Statutes**

28 U.S.C. § 1404(a)................................................................................... 2, 9, 11

28 U.S.C. § 1406(a)................................................................................... 2, 9, 11

California Business and Professions Code § 17200 ...................................... 5, 12

California Labor Code § 1050 .......................................................................... 12

California Labor Code § 970.............................................................................. 5

Federal Rules of Civil Procedure 12(b)(1)............................................... 1, 8, 9

|  | Page(s) |
|---|---|
| Federal Rules of Civil Procedure 12(b)(3)................................................... 1, 8, 9 |
| Federal Rules of Civil Procedure 12(b)(6)................................................... 1, 2, 8, 9 |

**Other Authorities**

Schwarzer et al., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL
PROCEDURE BEFORE TRIAL, 9-41 (The Rutter Group 2008)........................... 8

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3    This case should be dismissed or transferred because Plaintiff agreed in a

4    contractual forum selection clause to litigate this action in Massachusetts.

5    Likewise, Plaintiff cannot state a claim under California law because he agreed that

6    Massachusetts law governs the instant dispute.

7    When Plaintiff Richard Migliozzi ("Plaintiff") began his employment with

8    Defendant Sapient Corporation ("Sapient" or the "Company"), he signed the Sapient

9    Fair Competition Agreement ("SFCA") and Sapient Confidentiality Agreement

10    ("SCA"), both of which contained forum selection and choice of law clauses,

11    pursuant to which Plaintiff voluntarily and freely agreed to litigate this action in

12    Massachusetts and be governed by the law of Massachusetts, where Sapient

13    maintains its principal place of business.[1]

14    A dispute now has arisen between the parties, as reflected in the Complaint,

15    by which Plaintiff contends that Sapient interfered with his attempt to find

16    alternative employment with Sapient's client (Sony).    Sapient maintains that

17    Plaintiff, in the manner in which he pursued alternative employment with Sony,

18    sought to usurp Sapient's business opportunities by capitalizing on its proprietary

19    information and business practices, thus creating a conflict of interest in violation of

20    Plaintiff's contractual duties under the SFCA, SCA and SCEC.    Plaintiff submits

21    that, at all times, he acted ethically in regards to his communications with Sony and

22    he complied with his contractual duties owed to Sapient.    Thus, the genesis of this

23    action is the SFCA and SCA, pursuant to which Plaintiff agreed to a Massachusetts

24    forum and application of Massachusetts law to resolve the parties' dispute.

25    In contravention of the forum selection clause, Plaintiff brought the

26    underlying action in the Superior Court for the State of California, County of San

27

28    [1]    Plaintiff also acknowledged and agreed in writing to abide by the terms of
         Sapient's Code of Ethics and Conduct ("SCEC").

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

847848.03/OC

1  Diego. And, in derogation of the choice of law provision, Plaintiff asserts claims
2  under California law. Sapient timely removed the action to this Court. For the
3  reasons discussed below, Sapient submits that the forum selection and choice of law
4  clauses are valid and enforceable and, therefore, the instant action should be
5  dismissed or, alternatively, transferred to the federal district court for the District of
6  Massachusetts.

7  **II.     STATEMENT OF FACTS.**

8      **A.     Sapient Corporation.**

9        Sapient is a global company that partners with its clients to help advance its
10  clients' businesses in the areas of marketing, business operations and technology.
11  (*See* Declaration of Bryan Jones ("Jones Decl."), ¶ 3.) To fulfill its business purpose
12  and satisfy its clients' needs, Sapient may install two or more employees ("Teams")
13  at a client's offices, where the Teams work hand in hand with the client's employees
14  to achieve the client's business objective. (*Id.*) The Sapient Teams are entrusted
15  with confidential and proprietary information and know-how belonging to Sapient to
16  perform the tasks for which the client has engaged Sapient. (*Id.*)

17        Armed with proven methods, proprietary technology, and seasoned with
18  experience that comes from working with some of the world's most successful
19  brands, Sapient enjoys a preeminent reputation and unparalleled success rate. That's
20  in essence what the client is buying from Sapient -- the "know how" to advance a
21  company's business in mission critical areas. (Jones Decl., ¶ 3.)

22        Sapient must therefore take steps to protect itself against misappropriation of
23  confidential information and ethical breaches that threaten its business model -- both
24  by its employees and clients. (Jones Decl., ¶ 4.) To this end, Sapient requires all of
25  its employees to sign the Company's Confidentiality Agreement ("SCA") and agree
26  to abide by the terms of the Code of Ethics and Conduct ("SCEC"). (*Id.*) Further,
27  Sapient employees with higher-level access to confidential information are required
28  to sign the Company's Fair Competition Agreement ("SFCA"). (*Id.*) In addition,

1   Sapient contracts with its clients in a manner designed to avoid the client's knowing

2   or unknowing misappropriation of Sapient's confidential information. (Jones Decl.,

3   ¶ 4.)   Critical to Sapient's success is that the Team members act at all times in

4   Sapient's best interests and that Sapient's clients respect Sapient's relationship with

5   its employees, as well as the Company's proprietary information -- information

6   which literally is unveiled on site. (*Id.*)

7       Sapient's business is imperiled if an employee, during an assignment,

8   discloses Sapient's confidential and proprietary information and trade secrets to the

9   client in an effort to promote his own self interest -- *e.g.,* tries to secure a job with

10  the client. (Jones Decl., ¶ 5.)  In addition to the compromise of valuable proprietary

11  information, any such disclosure or threatened disclosure may create a conflict of

12  interest and lead a client to justifiably question whether the individual is acting in

13  the client's best interest (as a dedicated member of the Sapient Team) or in his/her

14  own personal interest (as someone wanting to get a new job). (*Id.*)  Sapient's clients

15  need to know that the company, including client teams, are completely committed to

16  helping them succeed. (*Id.*)

17      **B.    Sapient's Rationale for the Forum Selection and Choice of Law**

18          **Clauses.**

19      Sapient has its principal place of business in Massachusetts, where it houses

20  approximately 268 employees.   (Jones Decl., ¶ 7.)   The Company only has

21  approximately 25 employees in San Diego, but it maintains no office there. (*Id.*)

22  Most of the Company's global operations and decision-making are conducted

23  through the Massachusetts corporate home. (*Id.*)  Its offices elsewhere are to further

24  service Sapient's clients. (Jones Decl., ¶ 7.)  Central business decisions are therefore

25  made out of the Massachusetts corporate home. (*Id.*)

26      Due to the centralization of the Company in Massachusetts, and solely to

27  facilitate consistency and accountability in the event of legal disputes, the Company

28  maintains in its employment agreements, a forum selection clause designating

1  Massachusetts as the applicable forum and appointing Massachusetts law to govern
2  any dispute that may arise. (Jones Decl., ¶ 8.)  A uniform forum and choice of law
3  is crucial to ensure that both Sapient's employees and clients understand and comply
4  with their legal and contractual obligations and to avoid the potential for
5  inconsistent results and forum shopping.  (*Id.* at ¶ 9.)  Whether the employee is
6  located in Massachusetts, New York or California, the contractual obligations of the
7  parties are the same and should be applied consistently. (*Id.*)

8        **C.    Plaintiff Richard Migliozzi.**

9        On or about May 22, 2006, Sapient hired Plaintiff as an Associate, Creative
10  Design in its offices in San Diego, California.   When Plaintiff began his
11  employment with Sapient, he signed the SFCA and SCA, and he also acknowledged
12  and agreed in writing to abide by the terms of the SCEC. (Jones Decl., ¶ 6 & Exhs.
13  A, B & C.)  Bestowed with proprietary information belonging to Sapient, Plaintiff
14  was assigned to a team at Sony Electronics, where he principally worked during his
15  employment with Sapient.

16        At some point during his assignment with Sony, Plaintiff pursued
17  employment with Sony.  The pursuit of employment was not problematic.  Rather,
18  the clandestine manner in which Plaintiff pursued employment with Sony, while he
19  was employed with Sapient and working at Sony's facility, created a conflict of
20  interest and reasonably caused Sapient concern that Plaintiff had disclosed its
21  proprietary information to Sony to obtain a job with Sony, thereby usurping
22  Sapient's business opportunities and jeopardizing its corporate assets.

23        A dispute exists as to whether Plaintiff resigned or was terminated by Sapient.
24  More fundamentally, a dispute exists between the parties concerning Plaintiff's
25  compliance with his contractual obligations (under the SFCA and SCA) to Sapient
26  in connection with Plaintiff's dealings with Sony.  Although Sapient could have
27  brought, and indeed may bring, a declaratory relief and/or breach of contract action

28

1  against Plaintiff in Massachusetts with respect to Plaintiff's contractual obligations

2  pursuant to the SFCA and SCA, Plaintiff was first to the courthouse steps.

3      **D.    Plaintiff's Claims and Procedural History.**

4          In disregard of his promises to litigate in Massachusetts under Massachusetts

5  law, on or about April 21, 2008, Plaintiff filed a Complaint in California state court,

6  asserting claims for defamation, fraud, violation of California Labor Code Section

7  970, breach of contract, breach of the covenant of good faith and fair dealing,

8  violation of public policy, tortious interference with prospective economic

9  advantage, and violation of California Business and Professions Code Section

10 17200. The gravamen of Plaintiff's lawsuit is that, despite his compliance with his

11 contractual obligations to Sapient, the Company wrongfully interfered with

12 Plaintiff's employment opportunities elsewhere, namely, with Sony. On June 12,

13 2008, Sapient timely and properly removed the action to this Court on the basis of

14 diversity jurisdiction.

15 **III.    ARGUMENT AND AUTHORITIES.**

16      **A.    The Forum Selection Clause Mandates Dismissal Or Transfer Of**

17          **The Action.**

18          1.    Massachusetts Law Governs The Validity And Effect Of The

19              Forum Selection Clause.

20          The operative agreements contain a choice of law provision designating

21 Massachusetts law. Under Massachusetts law, the parties' intent generally should be

22 given effect. *See Strenko v. Inforex, Inc.*, 5 Mass. App. Ct. 253, 260 (1970)

23 ("[w]here the parties have expressed a specific interest as to the governing law,

24 Massachusetts courts will uphold the parties' choice of law so long as the result is

25 not contrary to public policy and as long as the designated state has some substantial

26 relation to the contract"); *see also Jacobson v. Mail Boxes Etc. USA, Inc.*, 419 Mass.

27 572, 575, 646 N.E.2d 741 (1995) (Massachusetts courts apply the law of the state

28 selected by the parties when analyzing the effect of a forum selection clause).

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

847848.03/OC

1    Applying Massachusetts choice of law principles here, the parties' choice of
2 law provision should be honored because (i) enforcement is not contrary to public
3 policy, and (ii) Massachusetts has a substantial relationship to the contract, mainly,
4 it is where Sapient has its principal place of business and conducts most of its
5 business operations.

6    It should be noted that the choice of law analysis would find a similar result
7 under California law (as would apply to the question of enforceability of the forum
8 selection clause in this federal diversity action absent the Massachusetts choice of
9 law provision). *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-465
10 (1992) (holding that the state designated in the contract will be applied by California
11 courts unless (i) there is no reasonable basis for the parties selection, or (ii) the law
12 is contrary to a fundamental public policy of California). Hence, Massachusetts law
13 governs this dispute, including the threshold question of the validity and effect of
14 the forum selection clause. *See, e.g., Abbot Laboratories v. Takeda Pharmaceutical*
15 *Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the
16 validing and meaning of a forum selection clause . . . by reference to the law of the
17 jurisdiction whose law governs the rest of the contract . . .").

18         2.    The Forum Selection Clause Warrants Dismissal Or,
19               Alternatively, Transfer Of The Action.
20               a.    This Case Arises Out Of The SFCA and SCA.

21    The SCA, and the SFCA in particular, reflect Sapient's effort to protect its
22 confidential information, guard against unfair competition and avoid conflicts of
23 interest. Thus, this lawsuit clearly arises out of the SFCA and SCA. *See Manetti-*
24 *Farrow Inc. v. Gucci Amer., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (applying forum
25 selection clause to tort claims as well as contract claims).

26
27
28

1              **b.    The Intent Of The Forum Selection Clause Is That**

2                  **Litigation To Enforce Plaintiff's Promises Under The**

3                  **SFCA and SCA Shall Proceed In Massachusetts.**

4       The forum selection clause at issue provides: "If we [Sapient] need to use the

5    court system to enforce the promises in this Agreement, you [Plaintiff] agree to

6    consent to the jurisdiction of the state and federal courts of Massachusetts." (*See*

7    SFCA, Section 8.6.)   While the clause does not contain a negative exclusion of

8    jurisdiction, it should be treated as mandatory, rather than permissive, in light of the

9    circumstances of this case.

10      Because the promises set forth in the SFCA, SCA and SCEC are made by the

11    employee, Plaintiff, for the benefit of Sapient and its clients, it was only

12    contemplated that enforcement of the promises would be sought by Sapient in an

13    action initiated by Sapient.   Nevertheless, Sapient seeks, through this action,

14    enforcement of the promises set forth in the operative agreements; which it could

15    have sought by instituting a lawsuit against Plaintiff in Massachusetts. The fact that

16    Sapient now seeks to enforce those promises as a "defense" to Plaintiff's claims,

17    rather than laying the foundation for affirmative claims for relief by Sapient, is

18    irrelevant.   Regardless of whether the enforcement of Plaintiff's promises is sought

19    by defensive or affirmative measures – the intent of the parties is clear –

20    enforcement of the promises under the SFCA and SCA is to take place in

21    Massachusetts.

22      Aside from giving effect to the parties' intent, the clause should be enforced to

23    avoid an amorphous result depending on which party initiates litigation.   To this

24    point, if Sapient initiated litigation in Massachusetts, there is no doubt that Plaintiff

25    would have been compelled to litigate there.   In this respect, the forum selection

26    clause is mandatory.   It is mandatory upon the party sued if that party had in the

27    clause consented to jurisdiction, as Plaintiff did here. *See, e.g., Snapper, Inc. v.*

28    *Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999) (discussing that the "mandatory"

1   and "permissive" labels are not decisive; recognizing that even permissive clauses

2   may become mandatory and should not be read out of a contract); *see also Ocwen*

3   *Orlando Holdings Corp. v. Harvard Property Trust, LLC*, 2008 U.S. App. LEXIS

4   10181 (11th Cir. 2008) (same).

5        Holding that the clause is permissive only would serve to reward forum

6   shopping and the first to initiate litigation.  It also would require that Sapient

7   commence litigation in Massachusetts to enforce Plaintiff's contractual obligation to

8   litigate his claims in that forum.  Principles of fairness and judicial economy warrant

9   enforcement of the forum selection clause.  Indeed, enforcing the forum selection

10  clause would give effect to Plaintiff's promise to litigate in Massachusetts where, as

11  here, Sapient needs to use the court system to enforce Plaintiff's promises in the

12  SPCA and SCA.

13        **c.    The Forum Selection Clause Provides The Basis For**

14             **Dismissal Or Transfer Due To Improper Venue.**

15        Federal courts appear to be split on whether a motion to dismiss pursuant to a

16  contractual forum-selection clause should be treated as a motion under Rule

17  12(b)(1), 12(b)(3) or 12(b)(6).  *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma,*

18  *Inc.*, 471 F.3d 544, 547 (4th Cir. 2006).

19        In the First Circuit (which encompasses the Massachusetts federal court), a

20  motion to dismiss based upon a forum selection clause is treated as one alleging the

21  failure to state a claim upon which relief can be granted under Fed. R. Civ. P.

22  12(b)(6).  *Silva v. Encyclopedia Brittanica, Inc.*, 239 F.3d 385, 387 (1st Cir. 2001).

23        One of the leading federal practice guides suggests: "Defendants can (and

24  should) move to dismiss for improper venue under all applicable rules." Schwarzer

25  et al., CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL, 9-

26  41 (The Rutter Group 2008) (citing *Rainforest Café, Inc. v. EklecCo., L.L.C.*, 340

27  F.3d 544, 546 n.5 (implying that it is unnecessary to determine what mechanism to

28  enforce a forum selection clause is the proper procedure where motion brought

1  under all potentially applicable options)). Borrowing from this logic, yet with

2  deference to the First Circuit, Sapient moves for relief under 12(b)(1), 12(b)(3) and

3  12(b)(6), as well as 28 U.S.C. §§ 1406(a) and 1404(a).

4                    **d.    The Forum Selection Clause Is Enforceable**.

5        Federal courts have long enforced forum selection clauses as a matter of law.

6  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("forum selection

7  clauses are *prima facie* valid and should be enforced unless enforcement is shown

8  by the resisting party to be 'unreasonable under the circumstances'; resisting party

9  bears a heavy burden of proof in its attempt to demonstrate unreasonableness); *see*

10 *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595-596 (1991) (enforcing

11 forum selection clause appearing on ticket to cruise and recognizing that such

12 clauses have the "salutary effect of dispelling any confusion about where suits

13 arising from contract must be brought and defended, sparing litigants the time and

14 expense of pretrial motions to determine the correct forum and conserving judicial

15 resources that otherwise would be devoted to deciding such motions").

16       Post-*Bremen*, courts applying Massachusetts law and federal courts in the

17 First Circuit have identified several factors to be weighed in the decision as to

18 whether a forum selection clause is reasonable, just and freely entered into. The

19 factors are as follows: (i) the law governing the contract in question, (ii) the place of

20 execution of the contract, (iii) the place where the transactions have been or will be

21 performed, (iv) the availability of remedies in the contractually designated forum,

22 (v) the public policy of the plaintiff's choice of forum state; (vi) the location of

23 parties, convenience of witnesses and accessibility of evidence; (vii) the relative

24 bargaining power of the parties and the circumstances of the negotiations; (viii) the

25 presence of fraud or other undue influence; and (ix) the conduct of the parties. *Doe*

26 *v. Seacamp Ass'n, Inc.*, 276 F.Supp.2d 222, 225 (D. Mass. 2003). One

27 Massachusetts Superior Court has adopted a slightly condensed version of these

28 factors. *Lectric's & Inc. v. Power Controls, Inc.*, 3 Mass. L. Rep. 507 (1995) (These

1   factors include "1) which state law governs the contract; 2) the residence of the
2   parties and witnesses; 3) place of execution and/or performance of the contract;
3   4) public policy; 5) availability of remedies in the selected forum; and
4   6) inconvenience or injustice.")    Whether analyzed under the nine factor or
5   abbreviated test, the result is the same – Plaintiff cannot sustain his "heavy" burden
6   of proving unreasonableness. *Doe*, 276 F.Supp.2d at 225. "However the factors are
7   articulated, the [plaintiff's] burden in resisting the forum selection clause is a heavy
8   one." *Id.*

9       The first factor and perhaps the most significant – the governing law –
10  anchors the case in Massachusetts. The second factor – place of execution – is split:
11  Plaintiff executed the agreements in California, while Sapient appended its signature
12  in Massachusetts. Regarding the third factor, Sapient concedes that the place of
13  performance of services by Plaintiff was in California.

14      The fourth and fifth factors militate in favor of the Massachusetts forum. In
15  regards to the fourth factor – the availability of remedies – Massachusetts courts
16  provide no limitations on remedies being sought by Plaintiff. The fifth factor –
17  public policy – favors enforcement because both California and Massachusetts favor
18  enforcement of forum selection clauses and no public policy of either state would be
19  offended by enforcement. The sixth factor – which deals with the location of the
20  parties, the convenience of witnesses and the accessibility of evidence – is
21  inconsequential. Witnesses and evidence are located in each state.

22      As for the seventh factor, Sapient submits that the parties' relative bargaining
23  power militates in its favor. *Silva*, 239 F.3d at 389 (employer's alleged superior
24  bargaining power deemed insufficient to void forum selection clause contained in
25  employment contract). That leaves the eighth and ninth factors, i.e. the conduct of
26  the parties coupled with the presence (or absence) of fraud, undue influence or the
27  like. There is simply no evidence that inclusion of the forum selection clause in the
28

1   contract was the product of fraud or coercion. *Lambert v. Kysar*, 983 F.2d 1110,

2   111 (1st Cir. 1993). Hence, there is no reason to void the forum selection clause.

3       On balance, Plaintiff cannot meet his heavy burden of avoiding the forum

4   selection clause.

5   **B.    This Court May Alternatively Dismiss Or Transfer The Case**

6   **Pursuant To 28 U.S.C. § 1406(a).**

7       Where, as here, plaintiff commences the action in the wrong district, the court

8   shall dismiss, or if it be in the interest of justice, transfer the action to any district in

9   which it could have been brought. 28 U.S.C. § 1406(a). Sapient submits that this

10  case should have been brought and certainly could have been brought in federal

11  court in Massachusetts. Hence, dismissal or transfer under Section 1406(a) is

12  proper.

13  **C.    This Court Should Alternatively Transfer To Massachusetts For**

14  **Convenience Pursuant To 28 U.S.C. § 1404(a).**

15      "For the convenience of parties, witnesses and in the interest of justice," the

16  court may transfer an action "to any other district or division where it might have

17  been brought." 28 U.S.C. § 1404(a). For the reasons set forth above in Section

18  III.A.2.d, most significantly, the forum selection clause, the Court should transfer

19  this case in the interests of justice. *See Stonehenge, Ltd. v. Garcia*, 989 F.Supp. 539,

20  540 (S.D.N.Y. 1998) ("A party resisting transfer to a forum designated in its

21  contract must demonstrate 'exceptional facts' indicating that transfer would be

22  inappropriate"); *see also P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d

23  804, 807 (11th Cir. 2003) ("the venue mandated by a choice of forum clause rarely

24  will be outweighed by other 1404(a) factors").

25  **D.    Plaintiff's Claims Under California Law Must Be Dismissed**

26  **Because Massachusetts Law Governs This Dispute.**

27      Plaintiff agreed that Massachusetts law governs the instant dispute.

28  Nevertheless, he styles claims under California law and statutes. For example,

1   Plaintiff's first, third and eighth claims for relief are brought under California
2   statutes – Labor Code Section 1050 (the first claim), Labor Code Section 970 (the
3   third claim) and Business and Professions Code Section 17200 (the eighth claim).
4   Because the substantive law of Massachusetts, rather than California, governs this
5   action, Plaintiff's California claims fail on their face as a matter of law and should
6   be dismissed.  No legitimate basis exists to invalidate the parties' choice of law.  *See*
7   *Nedlloyd Lines*, 3 Cal.4[th] at 464-465; *accord Strenko*, 5 Mass. App. Ct. at 260.

8   **IV.    CONCLUSION.**

9       For the foregoing reasons, Sapient respectfully requests that the Court grant
10  this motion and enter an order dismissing Plaintiff's Complaint or, alternatively,
11  transferring the action to the Massachusetts district court.  Sapient also respectfully
12  requests that the Court dismiss Plaintiff's claims presented under California law.

13

14  Dated:  June __17__, 2008          ALLEN MATKINS LECK GAMBLE
15                                     MALLORY & NATSIS LLP
16
                                       By:
17                                         JASON A. WEISS
18                                         Attorneys for Defendant
                                           SAPIENT CORPORATION
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE BY MAIL**

STATE OF CALIFORNIA      )
                                             )    ss.:
COUNTY OF ORANGE         )

    I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1900 Main Street, Fifth Floor, Irvine, California 92614-7321.

    On June ___, 2008, I served on interested parties in said action the within:

**NOTICE OF MOTION AND MOTION TO DISMISS FOR IMPROPER VENUE AND VIOLATION OF CHOICE OF LAW PROVISION; OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER BASED ON FORUM NON CONVENIENS**

by placing a true copy thereof in sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

Brian C. Gonzalez, Esq.
Law Offices of Brian C. Gonzalez
2533 S. Coast Highway 101, Suite 250
Cardiff by the Sea, California  92007

    I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

    Executed on June ___, 2008, at Irvine, California.


_____          _____
Stephanie S. Pattis                                        (Signature)
(Type or print name)

1   JASON A. WEISS (BAR NO. 185268)
     CHARLENE J. WILSON (BAR NO. 222497)
2   ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
3   1900 Main Street, Fifth Floor
     Irvine, California 92614-7321
4   Phone:  (949) 553-1313
     Fax:  (949) 553-8354
5   E-Mail:  jweiss@allenmatkins.com
           cwilson@allenmatkins.com
6
   Attorneys for Defendant
7   SAPIENT CORPORATION

8                 UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   RICHARD MIGLIOZZI, | Case No. 08 CV 1045 IEG CAB |
| 12         Plaintiff, | **DECLARATION OF BRYAN JONES** |
| 13     vs. | |
| 14   SAPIENT CORPORATION; and DOES | Date:        August 4, 2008 |
|    1 through 50, inclusive, | Time:        10:30 a.m. |
| 15 | Ctrm:       1 |
|         Defendants. | Complaint Filed:   April 21, 2008 |
| 16 | Trial Date:       None Set |

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

848328.01/OC

1     I, Bryan Jones, declare:

2     1.    I am, and since January 29, 2007 have been, employed by Sapient

3 Corporation ("Sapient" or the "Company"), in the position of Director, People

4 Strategy.  I have personal knowledge of the facts set forth in this declaration, and if

5 called as a witness, I could and would testify competently to such facts under oath.

6     2.    In my role as Director, People Strategy, I am familiar with the general

7 operations of Sapient's business and with the Company's policies and practices,

8 including, without limitation, those policies aimed at protecting Sapient's

9 confidential and proprietary information and avoiding conflicts of interest and unfair

10 competition by the Company's employees.

11     3.    Sapient is a global company that partners with its clients to help

12 advance its clients' businesses in the areas of marketing, business operations and

13 technology.  To fulfill its business purpose and satisfy its clients' needs, Sapient may

14 install two or more employees ("Teams") at a client's offices, where the Teams work

15 hand in hand with the client's employees to achieve the client's business objective(s).

16 The Sapient Teams are entrusted with confidential and proprietary information and

17 know-how belonging to Sapient to perform the tasks for which the client has

18 engaged Sapient.  What our clients are buying from us is the "know how" to

19 advance the client's business in mission critical areas.

20     4.    As a company, Sapient takes steps to protect itself against

21 misappropriation of confidential information and ethical breaches that threaten its

22 business model -- both by its employees and clients.  To this end, Sapient requires

23 all of its employees to sign the Company's Confidentiality Agreement ("SCA") and

24 agree to abide by the terms of the Code of Ethics and Conduct ("SCEC").  Further,

25 Sapient employees with higher-level access to confidential information are required

26 to sign the Company's Fair Competition Agreement ("SFCA").  In addition, Sapient

27 generally contracts with its clients in a manner designed to avoid the client's

28 knowing or unknowing misappropriation of Sapient's confidential information and

1  business assets.  Critical to Sapient's success is that the Team members act at all
2  times in Sapient's best interests and that Sapient's clients respect Sapient's
3  relationship with its employees, as well as the Company's proprietary information --
4  information which literally is unveiled on site.

5      5.      Sapient's business is imperiled if an employee, during an assignment,
6  discloses Sapient's confidential and proprietary information and trade secrets to the
7  client in an effort to promote his own self interest -- *e.g.,* tries to secure a job with
8  the client.  In addition to the compromise of valuable proprietary information, any
9  such disclosure or threatened disclosure may create a conflict of interest and lead a
10  client to justifiably question whether the individual is acting in the client's best
11  interest (as a dedicated member of the Sapient Team) or in his/her own personal
12  interest (as someone wanting to get a new job).  Sapient's clients need to know that
13  the Company, including client teams, are completely committed to helping them
14  succeed.  That is why these issues are addressed in the SFCA, SCA and SCEC.

15      6.      Attached hereto as Exhibits A, B and C are the SFCA, SCA and SCEC
16  (collectively, the "Agreements"), respectively, which Plaintiff Richard Migliozzi
17  received and signed during his employment with Sapient.  The Agreements are
18  believed to have been signed by Mr. Migliozzi in California; the Agreements were
19  countersigned by Sapient in Massachusetts.

20      7.      Sapient has its principal place of business in Massachusetts, where it
21  houses approximately 268 of the Company's 1,400 U.S. employees.  The Company
22  only has approximately 25 employees in San Diego, but it maintains no office there.
23  Most of the Company's global operations are conducted through the Massachusetts
24  corporate home.    Central business decisions are therefore made out of the
25  Massachusetts corporate home.

26      8.      Due to the centralization of the Company in Massachusetts, and solely
27  to facilitate consistency and accountability in the event of legal disputes, the
28  Company maintains in its employment agreements, including the SFCA and SCA, a

1  forum selection clause, designating Massachusetts as the applicable forum, and a

2  choice of law clause, appointing Massachusetts law to govern any dispute that may

3  arise.

4        9.    A uniform forum and choice of law is crucial to ensure that both

5  Sapient's employees and clients understand and comply with their legal and

6  contractual obligations and to avoid the potential for inconsistent results and forum

7  shopping.    Whether the employee is located in Massachusetts, New York or

8  California, the contractual obligations of the parties are the same and should be

9  applied consistently.

10        I declare under penalty of perjury that the foregoing is true and correct.

11  Executed this _17_ day of June, 2008, in _Boston, MA_.

13

14        BRYAN JONES

# Exhibit "A"



### Sapient Confidentiality Agreement

**Parties.** In this Agreement, the terms "we," "us," and "our" refer to Sapient Corporation and its subsidiaries. The terms "you" and "your" refer to the individual who signs this Agreement. The term "the parties" refers to both us and you.

### Background

- We are in the business of helping clients innovate their businesses to achieve extraordinary results from their customer relationships, business operations and technology.

- You are an individual in whom we have great confidence, and whom we entrust with responsibilities to help our clients achieve these results.

- From time to time, we may also entrust you with information — our own or our clients' — that we need you to protect.

Therefore, in consideration of the promises contained in this Agreement, the parties agree as follows.

### Terms and Conditions

**1    Your Employment**

Your continued employment with us (either by Sapient Corporation or one of its subsidiaries) is contingent on your making the promises laid out in this Agreement. We hope that our employment relationship will last and be rewarding for you, for us and for our clients. But entering into this Agreement does not change the at-will nature of your employment. In other words, despite this Agreement, you remain free to leave our employment for any reason or for no reason at all; similarly, we remain free to have you leave your employment for any reason or for no reason at all. Nothing in this Agreement is intended to bind us in an employment relationship for a certain term. The term of your employment is the period during which we employ you.

**2    Protecting Confidential Information**

**2.1    Our Confidential Information Defined.** Our ability to help clients succeed depends, in part, on information we possess that gives us an advantage over our competitors who lack this information. In this Agreement, we refer to this information as "our confidential information." We have gathered or developed our confidential information by expending time, energy and resources to better enable us to help our clients succeed. If our competitors were to learn our confidential information, they would gain an unfair advantage over us in the marketplace. If others were to learn our confidential information, it could jeopardize our relationships with our clients.

**2.2    Protecting Our Confidential Information.** Because you are a valued member of our team, we entrust you with some of our confidential information. You promise to protect our confidential information, and you promise that you will not share it with anyone, except as we direct. You also promise that you will not use our confidential information for your own use, or for anyone else's use, except as we direct. This promise extends beyond the term of your employment with us, and does not end unless we expressly release you from it in writing beforehand.

**2.3    Our Clients' Confidential Information.** Our clients often share with us their confidential information: that is, information they wish to keep secret from their competitors. We or they may share this confidential information with you. You promise to protect this confidential information, and you promise that you will not share it with anyone, except as we direct. You also promise that you will not use our clients' confidential information for your own use, nor for anyone else's use,

except as we direct. This promise extends beyond the term of your employment with us and does not end unless we expressly release you from it in writing beforehand.

**2.4    Your Former Employers' Confidential Information.** In your previous jobs with other employers, they may have entrusted you with their own confidential information. We have no desire to have you violate their confidential information. Therefore, you promise that, during your employment with us, you will not share your former employers' confidential information with us or anyone else beyond whom your former employers direct. By signing this Agreement, you assure us that nothing in it conflicts with (or would cause you to violate) any nondisclosure agreement you have signed with a previous employer of yours. If, during the course of your employment with us, you come to learn of a conflict you have with a previous nondisclosure agreement, you will notify us immediately.

**3    Inventions and Other Things You Create**
We strive to hire creative people, and creative people create things. This Agreement spells out who owns these creations.

**3.1    Creations You Own.** We claim no ownership of anything you create or invent that:

(A)    you develop entirely on your own time without using our equipment, supplies, facilities or trade secrets; **and**

(B)    is not related to our business, research or development (or business, research or development we can show that we anticipate doing); **and**

(C)    does not result from any work you did (or are doing) for us.

**3.2    Creations We Own.** Anything you create or invent during your employment with us, and for a period of one year after, that does not fall under paragraph 3.1 will be considered ours. You agree to assign any title or other rights in these creations to us. You agree that any of these creations that are protectable by US copyright law will be considered "works made for hire" for our benefit. You agree to maintain adequate written records of these creations, and you promise to help us in all reasonable ways (at our expense), both during and after your employment, in the acquisition, protection and defense of our rights to these creations.

**3.3    Your Previous Creations.** Before you joined us, you may have created things on your own or for previous employers. We have no desire to take ownership of these creations. Therefore, to avoid any conflict over when you created something and who owns it, you must list in **Exhibit A** all your previous creations to which you assert ownership. You need only include creations that relate to our business, services or products.

**4    Our Property**
You promise to return our property at the termination of your employment with us, or at any time that we ask you to do so. "Our property" includes both tangible and intangible things, such as information (whether confidential or not) in whatever form you have it.

**5    Assignment**
We may assign our duties or interests under this Agreement to any parent, affiliate, successor or subsidiary that we may have. You may not assign your duties or interests under this Agreement.

**6    Miscellaneous Provisions**

**6.1    Entire Agreement; Modification.** This Agreement contains all the terms and conditions agreed on by the parties relating to the protection of our confidential information and our clients' confidential information. Any previous agreements on this subject between the parties are replaced by this Agreement. This Agreement can be modified or changed only by a written document signed by both parties.

[continues next page]

-Page 2 of 4 Pages-



6.2     **Waiver.** A party's waiver of enforcement of any terms or conditions in this Agreement will be effective only if it is in writing. A waiver by us will be effective only if signed by a Chief Executive Officer of Sapient Corporation (specifically, Jerry Greenberg, Stuart Moore or their future replacement(s) in the CEO role). A party's specific waiver will not be considered a waiver of any earlier, concurrent or later breach.

6.3     **Survival.** This Agreement will remain in effect, regardless of any future changes to your job, title, compensation or the termination of your employment.

6.4     **Counterparts.** This Agreement may be executed in two counterparts, each of which is considered an original.

6.5     **Severability.** If a court rules that any part of this Agreement is unenforceable, the parties agree to have the court amend that part in the least way needed to make it enforceable. If the court declines to amend the Agreement, then the parties agree that the unenforceable part will be ignored and that the rest of the Agreement will continue in full force.

6.6     **Litigation.** This Agreement is governed by and must be interpreted under Massachusetts law, without regard to its choice-of-law principles. If we need to use the court system to enforce the promises in this Agreement, you agree to consent to the jurisdiction of the state and federal courts of Massachusetts. You also promise to pay our litigation costs and attorneys' fees if a court finds that you breached any of the promises you make in this Agreement.

6.7     **Headings.** All headings are for reference purposes only and must not affect the interpretation of this Agreement.

Dated: 5/24/06

SAPIENT CORPORATION (referred to as "we" throughout)

By:

*[signature]*

(printed name) <u>Andrea Edwards</u>

(title) <u>Vice President, People Success</u>

INDIVIDUAL EMPLOYEE (referred to as "you" throughout):

(signed name) *[signature]*

(printed name) <u>Rich Migliozzi</u>

Address:    <u>17311 Apel Lane</u>

<u>Huntington Beach, CA</u>

<u>92649</u>

-Page 3 of 4 Pages-



**Exhibit A: Your Previous Creations**

| Creation | Date Created | Description |
|----------|--------------|-------------|
| NONE | | |

This list is complete as of today.

5/24/06
Date

Your signature

*Exhibit "B"*



MANAGER AND ABOVE
USA (California)
v.3.1.06

### Sapient Fair Competition Agreement (California Employees)

**Parties.** In this Agreement, the terms "we," "us," and "our" refer to Sapient Corporation and its subsidiaries. The terms "you" and "your" refer to the individual who signs this Agreement. The term "the parties" refers to both us and you.

### Background

- We are in the business of helping clients innovate their businesses to achieve extraordinary results from their customer relationships, business operations and technology.

- You are an individual in whom we have great confidence, and whom we entrust with responsibilities to help our clients achieve these results.

- From time to time, we may also entrust you with information — our own or our clients' — that we need you to protect. We may also entrust you with developing and maintaining our good relationships with our clients ("our goodwill").

- While we are firm believers in the value of ordinary competition in the marketplace, we need to protect ourselves from unfair competition.

Therefore, in consideration of the promises contained in this Agreement, the parties agree as follows.

### Terms and Conditions

**1    Your Employment**

Your continued employment with us (either by Sapient Corporation or one of its subsidiaries) is contingent on your making the promises laid out in this Agreement. We hope that our employment relationship will last and be rewarding for you, for us and for our clients. But entering into this Agreement does not change the at-will nature of your employment. In other words, despite this Agreement, you remain free to leave our employment for any reason or for no reason at all; similarly, we remain free to have you leave your employment for any reason or for no reason at all. Nothing in this Agreement is intended to bind us in an employment relationship for a certain term. The term of your employment is the period during which we employ you.

**2    Our Promise**

In exchange for the promises you make in this Agreement, we promise to continue to employ you on an at-will basis, as described in the previous paragraph.

**3    Working Elsewhere during Your Employment with Us**

To best help our clients succeed, we need you to be fully committed to working here. Therefore, during the term of your employment, you may not perform work or other services — directly or indirectly, whether for compensation or not — for a person or entity that competes with us. You also may not solicit, encourage or help any of our people to do so. Similarly, you may not perform work or other services — directly or indirectly, whether for compensation or not — for any other person or entity, if doing so would diminish your ability to work for us.

**4    Clients and Solicitation**

You agree that, during the term of your employment with us and for 12 months after, you will not use our confidential information or our customers' confidential information to solicit or take away (or attempt to solicit or take away) any of our clients, either for your own business or for any other

**Sapient**
25 First Street
Cambridge, MA 02141

-Page 1 of 3 Pages-

**TEL**  617.621.0200
**FAX**  617.621.1300

person or entity, nor will you induce or encourage any client to sever or diminish its relationship or business with us.

**5    Soliciting Employees**

You agree that, during the term of your employment and for 12 months after, you will not use our confidential information or our customers' confidential information to solicit, encourage or assist any of our people to stop working for us, nor will you use our confidential information or our customers' confidential information solicit, encourage, assist or hire — directly or indirectly — any of our people to work for a competitor, for a client of ours or for you in the markets where we do business.

**6    Considerations in Working for Competitors or Clients**

We appreciate that we cannot prevent you from leaving our employment and going to work for one of our competitors or clients. We respect your legal right to do this. At the same time, we believe that your going to work for a competitor or client of ours could, in certain situations, create a conflict of interest that we ask you to consider in making your decision.

This conflict is especially likely in situations where you are discussing employment possibilities with our competitor or client while we are relying on you to be acting in our financial best interests.

An additional ethical complication can arise in situations where you are discussing possible employment with our client at the same time you are part of the Sapient team interacting with that client. Our client may justifiably question whether you are acting in the client's interest (as a dedicated member of the Sapient team) or in your own personal interest (as someone wanting to get a new job). Our clients need to know that we — including our client teams — are 100% committed to helping them succeed.

For these reasons, we would like you to follow the following guideline while you are working at Sapient and for six months afterwards:

- Before you discuss the possibility of going to work for one of our competitors or clients, we encourage you to let your Business Unit Lead (or, alternatively, a Chief Executive Officer or the Chief Operating Officer) know that you are interested in exploring this possibility. Any of them will be happy to openly discuss the situation — and its ethical implications — with you. In some situations, they may be able to offer their full support behind your efforts.

Although we cannot require you to follow this guideline, we hope that you will do so out of a sense of fairness and ethical responsibility.

**7    Assignment**

We may assign our duties or interests under this Agreement to any parent, affiliate, successor or subsidiary that we may have. You may not assign your duties or interests under this Agreement.

**8    Miscellaneous Provisions**

**8.1    Entire Agreement; Modification.** This Agreement contains all the terms and conditions agreed on by the parties relating to the protection of our confidential information (except for the Sapient Confidentiality Agreement) and goodwill. Any previous agreements (except for the Sapient Confidentiality Agreement) between the parties on this subject are replaced by this Agreement. This Agreement can be modified or changed only by a written document signed by both parties.

**8.2    Waiver.** A party's waiver of enforcement of any of this Agreement's terms or conditions will be effective only if in writing. A waiver by us will be effective only if signed by a Chief Executive Officer of Sapient Corporation (specifically, Jerry Greenberg, Stuart Moore or their future replacement(s) in the CEO role). A party's specific waiver will not be considered a waiver of any earlier, concurrent or later breach.



**8.3** **Survival.** This Agreement will remain in effect, regardless of any future changes to your job, title, compensation or the termination of your employment.

**8.4** **Severability.** If a court rules that any part of this Agreement is unenforceable, the parties agree to have the court amend that part in the least way needed to make it enforceable. If the court declines to amend the Agreement, then the parties agree that the unenforceable part will be ignored and that the rest of the Agreement will continue in full force.

**8.5** **Counterparts.** This Agreement may be executed in two counterparts, each of which is considered an original.

**8.6** **Litigation.** This Agreement is governed by and must be interpreted under Massachusetts law, without regard to its choice-of-law principles. If we need to use the court system to enforce the promises in this Agreement, you agree to consent to the jurisdiction of the state and federal courts of Massachusetts. You also promise to pay our litigation costs and attorneys' fees, if a court finds that you breached any of the promises you make in this Agreement.

**8.7** **Headings.** All headings are for reference purposes only and must not affect the interpretation of this Agreement.

**8.8** **Broad Interpretation of Employment, Work and Solicitation.** You recognize that it is possible to create many different types of arrangements under which you (or another person) might provide services, or perform work, for a competitor or client of ours (or for you). (For instance, instead of being an employee, you might act as an independent contractor or consultant, or in return for an equity ownership interest, or in other ways.) You understand that the intention of this Agreement is to prevent you from taking the actions that this Agreement prohibits, whether you may be engaged in a formal employer-employee arrangement with a third party, or in another sort of arrangement where work or services are performed. You agree that the restrictions on employment, work and solicitation contained in this Agreement will be interpreted broadly to include these other types of arrangements as well.

Dated: 5/24/06

SAPIENT CORPORATION (referred to as "we" throughout)

By:

_A Edwards_

(printed name) Andrea Edwards

(title) Vice President, People Success

INDIVIDUAL EMPLOYEE (referred to as "you" throughout):

(signed name) _[signature]_

(printed name) Rich Migliozzi

Address:    17311 Apel Lane

Huntington Beach, CA 92649

*Exhibit "C"*

Sapient Corporation

Code of Ethics and Conduct

Acknowledgement

Sapient and all of its subsidiaries have adopted a Code of Ethics and Conduct to communicate to all Sapient people the ethical and legal standards that we expect them to observe when dealing with Sapient, other Sapient people, our clients and our suppliers.

We expect all Sapient people to act ethically and obey the law. When you encounter ethical or legal issues where you are not certain about the correct course of action, you should use Sapient's Core Values and the principles described in the Code of Ethics and Conduct as guideposts in deciding how to proceed. We have adopted the Code of Ethics and Conduct to give you guidance for resolving these ethical and legal issues.

We have asked each Sapient person to acknowledge that they have read the Code of Ethics and Conduct, and agree to abide by its terms. By your signature below, you acknowledge that you have been provided with a copy of the Code of Ethics and Conduct, that you have read it, and that you agree to abide by its terms.

_____
Signature

Rich Migliozzi
Print Name

6/5/2006
Date

1

## PROOF OF SERVICE BY MAIL

2

3   STATE OF CALIFORNIA          )
                                  )   ss.:
4   COUNTY OF ORANGE             )

5

6        I am employed in the County of Orange, State of California.  I am over the
    age of 18 and not a party to the within action.  My business address is 1900 Main
7   Street, Fifth Floor, Irvine, California 92614-7321.

8        On June 17, 2008, I served on interested parties in said action the within:

9   **DECLARATION OF BRYAN JONES**

10  by placing a true copy thereof in sealed envelope(s) addressed as stated below and
    causing such envelope(s) to be deposited in the U.S. Mail at Irvine, California.

11       Brian C. Gonzalez, Esq.
         Law Offices of Brian C. Gonzalez
12       2533 S. Coast Highway 101, Suite 250
         Cardiff by the Sea, California  92007

13

14

15       I am readily familiar with this firm's practice of collection and processing
    correspondence for mailing.  Under that practice it would be deposited with the U.S.
16  Postal Service on that same day in the ordinary course of business.  I am aware that
    on motion of party served, service is presumed invalid if postal cancellation date or
17  postage meter date is more than 1 day after date of deposit for mailing in affidavit.

18       I declare under penalty of perjury that I am employed in the office of a
    member of the bar of this Court at whose direction the service was made and that the
19  foregoing is true and correct.

20       Executed on June 17, 2008, at Irvine, California.

21

22  _____          _____
         Stephanie S. Pattis
23       (Type or print name)                         (Signature)

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

848328.01/OC